IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Doth Sysouvanh and Phouthasone Sysouvanh,

(Chapter 7)

Debtors.

Case No. 10-17353

First National Bank of Omaha,

Plaintiff,

v.

Adv. No. 11-00001

Phouthasone Sysouvanh,

Defendant.

## MEMORANDUM DECISION

First National Bank of Omaha ("FNBO") brought this adversary proceeding against the defendant Phouthasone Sysouvanh to determine the nondischargeability of its claim under 11 U.S.C. § 523(a)(2)(A) and (B). At trial on July 8, 2011, FNBO failed to meet its burden of proof. I dismissed the proceeding, but reserved the question of whether the defendant was entitled to attorney's fees and costs under § 523(d).

The parties established these facts at trial. In March 2008, FNBO sent the defendant a pre-approved offer for a Visa credit card. On the application the defendant, a stay at home mother residing in Sun Prairie, WI, listed her employer as "self-employed." The defendant listed

1

her "total annual income" as $98,000, which was the amount of her husband's salary.[1]  Upon receiving the completed application, FNBO sought and received a credit report on the defendant through Experian.  The credit report noted that the defendant was employed by the Champaign, Illinois school district and had twenty-five open credit card accounts, carrying outstanding debt of $44,534.  Notwithstanding, FNBO approved the defendant's application and extended her a $15,000 line of credit.  Not long after, the defendant received a FNBO credit card at her residence.  By separate mailing the defendant received the "Credit Card Agreement."

From the time the defendant received the credit card until August, 2009, she incurred charges and made at least the required minimum monthly payments.  In August 2009, her account had a balance of approximately $12,190, which she and her husband paid off in full.  The defendant did not incur any new charges on the account until late March, 2010.  From March, 2010, to July 15, 2010 the defendant charged $11,063.39 in purchases on the account.  While some of the charges made during this period were for necessities like food and gas, some were for other items such as airplane tickets, sporting goods, country club fees and hotel stays.

The defendant made the required minimum payment on the account for the billing cycles ending in April and May, 2010, but failed to make a timely payment for the billing cycle ending in June.  On July 16, 2010, the defendant stopped using her FNBO credit card.  About this same time, the defendant and her husband realized they could no longer afford their monthly obligations, which led the defendant to call FNBO.  A representative for FNBO offered her two separate payment plan options that would have reduced her minimum monthly payments and interest rate. The defendant rejected both options, and on July 27, 2010, made an online payment of $100 towards her balance.

---

[1] An asterisk next to "total annual income" instructed the defendant to include "income from any source."

On August 8, 2010, the defendant and her husband contacted a bankruptcy attorney, whom they hired several weeks later. FNBO closed the defendant's account on August 20, 2010, when its balance was approximately $10,900. On October 3, 2010, the defendant and her husband filed for relief under chapter 7.

At trial I concluded that FNBO had not established a claim under § 523(a)(2)(A). There was no representation on the application that was false. And even if there were, FNBO's reliance on the defendant's credit application was not justified, nor was FNBO justified when it relied on the credit report, which varied markedly from the application and showed the defendant had twenty-five other unsecured lines of credit open with outstanding debt on those lines of $44,534. FNBO made no inquiry regarding the discrepancies related to her employment, nor the extensive number of credit cards and balances.

Furthermore, at the time the charges were incurred on the account, the defendant intended to repay FNBO. This was inferred from the defendant's testimony, and the fact she promptly stopped using the credit card on July 16, 2010, when she determined she was unable to make the minimum payment. The defendant's call to FNBO in hopes of setting up different payment options in July, 2010, also supports the inference that she genuinely intended to repay the debt.

The defendant's representations made on her application regarding her employment and annual income were both accurate and consistent with the directions given on the application. That a stay at home mother is "employed" has become an article of faith in modern USA, so her statement that she is "self-employed" is beyond a cavil. The application expressly stated that "income from all sources" should be included in the applicant's annual income and, under Wisconsin marital property law, that implies a spouse's income should be listed.

3

The only remaining issue is whether the defendant is entitled to attorney's fees and costs.

Attorney's fees and costs may be awarded under § 523(d), which provides:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not *substantially justified*, except that the court shall not award such costs and fees if special circumstances would make the award unjust. 11 U.S.C. § 523(d) (emphasis added).

The purpose of § 523(d) is to discourage creditors from bringing meritless actions with the purpose of extracting a settlement from a debtor who wishes to avoid the costs of litigating. *See Bridgewater Credit Union v. McCarthy (In re McCarthy)*, 243 B.R. 203, 208 (1st Cir. BAP 2000); *Phillips v. Napier (In re Napier)*, 205 B.R. 900, 908 (Bankr. N.D. Ill. 1997). A creditor is "substantially justified" in seeking the nondischargeability of its claim when its position has a reasonable basis in both fact and law. *Rice, Heitman & Davis v. Sasse (In re Sasse)*, 438 B.R. 631, 651 (Bankr. W.D. Wis. 2010) (citing *In re Hunt*, 238 F.3d 1098 (9th Cir. 2001). Because the defendant's intention to repay is central to a claim for actual fraud, there must be more than general evidence of credit card use to support that element. *See Hunt*, 238 F.3d at 1103 (finding that if the evidence admitted at trial has "virtually no tendency to prove" that the defendant "did not intend to repay," then the creditor's position is not substantially justified).

In this case, FNBO had some basis in law to assert its claim for fraud, but did not have a reasonable basis in fact. The Seventh Circuit defines "actual fraud" broadly to include any offense resulting from "surprise, trick, cunning, dissembling, and any unfair way by which another is cheated." *See McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000) (citing *Stapleton v. Holt*, 207 Okla. 443 (Okla. 1952)). Some bankruptcy courts have construed this definition to include defendants who incur significant credit card charges on the eve of filing bankruptcy. *In*

4

re Green, 296 B.R. 173 (Bankr. C.D.Ill. 2003); see also SUSAN V. KELLEY, GINSBERG & MARTIN ON BANKRUPTCY § 11.06[D][6][b].

At trial, FNBO offered only circumstantial evidence to prove the debtor's intention. The defendant carried a zero balance on her account for roughly seven months and then almost reached her credit limit in three months by incurring charges of $11,063. During the period the defendant incurred these charges, she had various other credit accounts with significant balances on them. Within three weeks of her last purchase on her FNBO account, the defendant contacted a bankruptcy attorney. A number of the charges were for country club fees, airplane fares, hotel costs and purchases at sporting good stores (although these were explained to be connected to the tennis education and competition of her 10 and 12 year old daughters). However, beyond this evidence FNBO presented little else that would support the defendant's intention to not repay the debt. The minimal evidence leads me to conclude that while FNBO may have had reason to undertake further review, it was not *substantially* justified in bringing this adversary proceeding.

In addition, the Bankruptcy Code provides that: "consumer debts...aggregating to more than $600 for luxury goods...incurred...on or within 90 days before the order for relief...are presumed to be nondischargeable." 11 U.S.C. 523(a)(2)(C)(i)(I). "Luxury goods" are considered those goods not reasonably necessary for the support or maintenance of the debtor, or the debtor's dependents. *See* 11 U.S.C. § 523(a)(2)(C)(ii)(II) ("the term luxury goods...does not include goods...reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor"). Once this presumption applies, the burden shifts to the defendant to establish that she intended to repay the debts at the time the charges were incurred. *See Discover Financial Services v. Goodman*, 2007 WL 7141752 (Bankr. N.D.Ga. 2007); *see also Green*, 269 B.R. at 179. However, no such presumption arose in this case; nor was it argued.

The evidence that FNBO presented was not enough to establish fraud, nor was it enough to justify its position that the defendant incurred charges, which she did not intend to repay. FNBO's position in this case was not "substantially justified" under § 523(d), and I find there is no circumstance that would make an award of attorney's fees and costs unjust. The defendant is entitled to attorney's fees and costs. Upon submission of an affidavit setting them forth and after review by the court, the defendant may have and recover from the plaintiff, attorney's fees and costs of this action. It may be so ordered.

Dated: July 21, 2011

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Doth Sysouvanh and Phouthasone Sysouvanh,

(Chapter 7)

Debtors.

Case No. 10-17353

First National Bank of Omaha,

Plaintiff,

v.

Adv. No. 11-00001

Phouthasone Sysouvanh,

Defendant.

ORDER

The court having reached the conclusions of law at the July 8, 2011 trial, and those contained in this memorandum decision filed on this date, it is hereby ORDERED, that the debt owed by the defendant to First National Bank of Omaha be discharged. The complaint filed by First National Bank of Omaha is DISMISSED. The defendant is awarded reasonable attorney's fees and costs.

Dated:  July 21, 2011

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE